UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| AXEL HERNOE, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 12-CV-0167-CVE-TLW |
| | ) | |
| LONE STAR INDUSTRIES, INC., | ) | |
| d/b/a BUZZI UNICEM USA, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Now before the Court is Defendant's Motion to Dismiss Plaintiff's Amended Complaint (Dkt. # 31). Plaintiff alleges claims of workplace discrimination under the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. (ADEA), and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. (Title VII), as well as an intentional infliction of emotional distress claim under Oklahoma law. The Court previously granted defendant Lone Star Industries, Inc. d/b/a Buzzie Unicem USA's (Lone Star) motion to dismiss, but the Court granted plaintiff leave to file an amended complaint alleging additional facts in support of his claims. Defendant argues that plaintiff has not alleged sufficient facts in his amended complaint to state a claim of age, gender, or racial discrimination under federal law or a claim of intentional infliction of emotional distress under Oklahoma law, and that his amended complaint should be dismissed without leave to amend. Plaintiff responds that he has adequately alleged workplace discrimination claims under a hostile work environment theory and an intentional infliction of emotional distress claim, and that defendant's motion to dismiss should be denied.

## I.

Axel Hernoe alleges that he was employed by Lone Star as a maintenance manager and that he worked in Mayes County, Oklahoma.[1] Dkt. # 27, at 1. Hernoe states that he is 62 years old and that he is of German descent. Id. at 2. Hernoe generally alleges that Lone Star discriminated against him on the basis of his age, gender, and national origin. He claims that Cathy Durham, a warehouse supervisor, and LeRoy Marsh, a special manager, "carried out" threats against him and excluded plaintiff from activities or harassed him because of his protected status. Id. at 2. He alleges that Durham and Marsh "carried out" threats by exchanging e-mails including death threats against plaintiff.[2] Durham sent an e-mail to Marsh stating that she knew "where you can hunt a big foot with gray hair and speaks German." Dkt. # 34-1, at 5.[3] Marsh responded that "I like head-shots" but it "wouldn't work." Id. Durham completed the e-mail exchange by stating that "[y]ou can take a head shot - might take more than one." Id. The e-mails were sent on October 13, 2010 and plaintiff does not allege that he was aware of the e-mails at that time.

---

[1] The amended complaint states that plaintiff now resides in Kentucky, but he also states that he "continues to feel threatened" by defendant's employees. Dkt. # 27, at 1, 3. The Court infers from other allegations in the amended complaint that plaintiff is no longer employed by defendant or, at least, he is no longer working for defendant in Mayes County.

[2] It appears that plaintiff uses the phrase "carried out" to mean that threats were made. Plaintiff would no longer be alive if Durham and Marsh "carried out" the alleged death threats.

[3] Defendant has provided copies of the e-mails with its motion to dismiss the amended complaint. The Court may consider the e-mails without converting defendant's motion into a motion for summary judgment, because the e-mails were specifically referenced in the amended complaint and are central to plaintiff's claims. Alvarado v. KOB-TV, LLC, 493 F.3d 1210, 1215 (10th Cir. 2007); GFF Corp. v. Associated Wholesale Grocers, Inc., 130 F.3d 1381, 1384-85 (10th Cir. 1997).

On April 1, 2011, Durham and Marsh began another e-mail exchange. Marsh complained that "therapy sucks" and said that he thought his "therapist is going to experience a car fire." Id. at 29. Durham suggested that Marsh "Tell the Dr. that you need a chill pill or someone might die." Id. Durham also stated that her doctor "put [her] on Xanax because of you know who." Id. at 28. Marsh responded that they should "put him on arsenic and be done with it," but neither Marsh nor Durham specifically identify "you know who" and they make no statements describing this person. Id. Plaintiff was not a party to the e-mail exchange and he does not allege that he saw the e-mails at or near the time they were sent. Plaintiff claims that on other occasions he was told by unidentified co-workers that his office "reeked of German food," and that he was routinely excluded from group functions at work. Dkt. # 27, at 3. Plaintiff also alleges that a calendar from a German vendor was left in the break room. Id.

It appears that plaintiff learned of the e-mails at some point, although this is not alleged in the amended complaint, because he claims that he reported the "threatening behavior and other discriminatory behavior" to the human resources manager, Chris Drake, and the plant manager, Dave Puzan. Id. Plaintiff alleges that no action was taken in response to his complaints and that he continues to feel threatened. Id. Plaintiff states that he exhausted his administrative remedies and filed this lawsuit after receiving a right-to-sue letter from the Equal Employment Opportunity Commission. Id. Plaintiff filed this case in the District Court of Mayes County, Oklahoma, alleging claims of age, race, and gender discrimination under federal law and a claim of intentional infliction of emotional distress under state law. Dkt. # 2-1, at 3-7. Defendant removed the case to this Court and filed a motion to dismiss (Dkt. # 17) plaintiff's petition. The Court granted defendant's motion to dismiss, but the Court allowed plaintiff to file an amended complaint realleging his claims if he

3

could provide more specific factual allegations in support of his claims. Dkt. # 26. Plaintiff filed an amended complaint describing the allegedly threatening e-mails, the alleged statements about German food, and the general allegations that he was excluded from activities by his co-workers. Defendant asks the Court to dismiss the amended complaint and has provided declarations from Puzan and Drake in support of its motion.[4]

## II.

In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court must determine whether the claimant has stated a claim upon which relief may be granted. A motion to dismiss is properly granted when a complaint provides no "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). A complaint must contain enough "facts to state a claim to relief that is plausible on its face"and the factual allegations "must be enough to raise a right to relief above the speculative level." Id. (citations omitted). "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 562. Although decided within an antitrust context, Twombly "expounded the pleading standard for all civil actions." Ashcroft v. Iqbal, 556 U.S. 662, 683 (2009). For the purpose of making the dismissal determination, a court must accept all the well-pleaded allegations of the complaint as true, even if doubtful in fact, and must construe the allegations in the light most favorable to claimant. Twombly, 550 U.S. at 555; Alvarado v. KOB-TV, L.L.C., 493 F.3d 1210, 1215 (10th Cir. 2007); Moffett v.

---

[4] Puzan and Drake make factual assertions in their declarations that are not contained in the amended complaint. See Dkt. ## 31, 32. Defendant has not asked the Court to treat its motion as one for summary judgment, and the Court declines to consider any additional factual allegations in the declarations that are not contained in the amended complaint or in documents specifically referenced in the amended complaint.

4

Halliburton Energy Servs., Inc., 291 F.3d 1227, 1231 (10th Cir. 2002). However, a court need not accept as true those allegations that are conclusory in nature. Erikson v. Pawnee County Bd. Of County Comm'rs, 263 F.3d 1151, 1154-55 (10th Cir. 2001). "[C]onclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." Hall v. Bellmon, 935 F.2d 1106, 1109-10 (10th Cir. 1991).

### III.

Defendant argues that plaintiff's amended complaint does not state a claim of discrimination based on age, race, or gender, because plaintiff has "added only a few additional sentences as 'factual support' for [his] bald, conclusory assertions" of workplace discrimination. Dkt. # 32, at 1. Defendant also asks the Court to dismiss plaintiff's intentional infliction of emotional distress claim. Id. at 7-8. Plaintiff responds that he has alleged enough facts to suggest that he felt threatened due to comments about his age and his German descent, and that he has stated a plausible hostile work environment claim. Dkt. # 37, at 5. Plaintiff also asserts that he was threatened and ridiculed by his co-workers and that he has adequately alleged a claim of intentional infliction of emotional distress under Oklahoma law. Id. at 7.

### A.

The Court initially notes that plaintiff does not allege that he suffered an adverse employment action, such as termination or denial of a promotion, and plaintiff acknowledges that his employment discrimination claims are based on a hostile work environment theory. Id. at 3. To state a claim under a hostile work environment theory, plaintiff must allege that he was targeted for harassment because of his protected status and that the harassment was so severe that it altered the conditions of his workplace environment. Sandoval v. City of Boulder, Colorado, 388 F.3d 1312,

5

1327 (10th Cir. 2005). An employee must allege that the harassment disrupts his job performance, and conduct is not actionable merely because it is "insensitive, tasteless, or vulgar." Bertsch v. Overstock.com, 684 F.3d 1023, 1028 (10th Cir. 2012). When determining if conduct is sufficiently severe or pervasive to constitute a hostile work environment, a court should consider "(1) the frequency of the discriminatory conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's work performance." MacKenzie v. City and County of Denver, 414 F.3d 1266, 1280 (10th Cir. 2005). A court must consider the severity of the harassment under a subjective and objective standard. Witt v. Roadway Exp., 136 F.3d 1424, 1432 (10th Cir. 1998).

The Court will consider each of plaintiff's claims of discrimination separately, and plaintiff must allege sufficient facts to state a plausible claim that he was subjected to a hostile work environment based on each of his alleged protected statuses (age, race, gender). Plaintiff's response repeatedly refers to a hostile work environment claim based on all three protected categories, but he cites no authority suggesting that a plaintiff may group all of his protected statuses to create a hostile work environment claim where none would exist for any protected status independently. The Court has reviewed the amended complaint and it is immediately apparent that plaintiff has alleged no facts suggesting that he was subject to discriminatory treatment based on his gender. Plaintiff's response to defendant's motion to dismiss contains no argument in support of an independent hostile work environment claim based on his gender, and this claim should be dismissed.

As to plaintiff's remaining employment discrimination claims, the key factual allegations in the amended complaint concern the allegedly threatening e-mails sent by Durham and Marsh.

6

However, plaintiff does not allege that he was aware of the e-mails at or near the time they were sent, and he does not allege that he suffered any emotional or physical mistreatment by Durham or Marsh as a result of the e-mails. The Tenth Circuit has stated that conduct of which a plaintiff was unaware may be admissible to establish discriminatory intent but it may not be relied upon by a plaintiff to show that a hostile work environment existed. Williams v. W.D. Sports, N.M., Inc., 497 F.3d 1079, 1094 n.10 (10th Cir. 2007); Creamer v. Laidlaw Transit, Inc., 86 F.3d 167, 171 (10th Cir. 1996). It is reasonable to infer that plaintiff learned of the e-mails at some point, because he claims that he reported "threatening behavior" to Drake and Puzan and no action was taken as a result of his complaint. Dkt. # 27, at 3. However, until plaintiff learned of the e-mails, it would not be reasonable to infer that the mere existence of the e-mails contributed to a hostile work environment. The e-mails were sent on October 13, 2010 and April 1, 2011,[5] and plaintiff must rely on other factual allegations to support the existence of a plausible hostile work environment claim before April 1, 2011.

The ADEA does permit a plaintiff to recover under a hostile work environment theory. See MacKenzie, 414 F.3d at 1280. Plaintiff argues that he was subject to a hostile work environment because of his age, but the only factual allegation that tends to support this claim is the single reference in Durham's October 13, 2010 e-mail to a "big foot with gray hair." This language could be construed as offensive and age related, but plaintiff must show that he actually "experienced" a

---

[5] For the purpose of ruling on defendant's motion to dismiss the amended complaint, the Court will assume that the April 1, 2011 e-mail exchange refers to plaintiff as "you know who," because the amended complaint refers to a threatening e-mail sent by Marsh stating that he would poison plaintiff with arsenic. Dkt. # 27, at 2. However, should plaintiff's claims survive dismissal, he must actually prove that he is "you know who" mentioned in the e-mails.

7

hostile work environment because of his age. McBride v. Peak Wellness Center, Inc., ___ F.3d ___, 2012 WL 3156325 (10th Cir. Aug. 6, 2012) (offensive e-mails sent during plaintiff's employment but of which plaintiff was unaware could not have contributed to a hostile work environment). Even if the Court were to infer that plaintiff learned of the comment at some point, he does not allege any other facts suggesting that he was harassed between October 13, 2010 and the time he learned of the e-mail because of his age. To state an ADEA claim under a hostile work environment theory, plaintiff must allege that the workplace was "permeated with discriminatory intimidation, ridicule, and insult, that [was] sufficiently severe or pervasive to alter the conditions" of his employment. Hernandez v. Valley View Hosp. Ass'n, 684 F.3d 950, 957 (10th Cir. 2012). A single comment in an e-mail that was not sent to plaintiff referencing a "big foot with gray hair" does not suggest that the workplace was so hostile that plaintiff's working conditions were altered. Plaintiff generally alleges that he was excluded from group functions and workplace activities, but the ADEA does not create "a general civility code" and "run-of-the-mill boorish, juvenile, or annoying behavior that is not uncommon in American workplaces is not the stuff" of a hostile work environment claim. Morris v. City of Colorado Springs, 666 F.3d 654, 663 (10th Cir. 2012). Even if plaintiff was not liked by his workers or was subjected to rude behavior, this would not make defendant liable to plaintiff under a hostile work environment theory under the ADEA. Plaintiff does not allege that he was excluded from functions because of his age, and these allegations do not tend to support an ADEA claim under a hostile work environment theory. At most, plaintiff has identified one e-mail exchange between two co-workers containing a remark about plaintiff's age. This does not suggest that the workplace was permeated with discriminatory conduct concerning plaintiff's age that altered plaintiff's working conditions, and plaintiff has not stated a plausible ADEA claim.

Plaintiff also claims that he was subjected to a hostile work environment because of his German descent, and he asserts that he has stated a plausible claim under Title VII for racial discrimination. The only specific comment referencing plaintiff's Germanic descent is Durham's statement in an e-mail concerning a "a big foot with gray hair and speaks German." Dkt. # 34-1, at 4. Plaintiff also claims that co-workers told him that his office "reeked of German food" and that a calendar from a German vendor was left in the break room. Dkt. # 27, at 3. As noted above, plaintiff was not aware of Durham's e-mail until an unspecified date well after it was sent, and plaintiff could not have experienced a hostile work environment based on an e-mail that he did not read. Plaintiff alleges that co-workers told plaintiff that his office "reeked of German food" and a calendar from a German vendor was left in the break room, but these allegations by themselves do not suggest that the alleged harassment was so severe and pervasive that it altered plaintiff's working conditions. In fact, there are no allegations that the alleged harassment interfered with plaintiff's ability to perform his job or that it altered the conditions of his employment. Construing the factual allegations of the amended complaint in a light most favorable to plaintiff, it appears that he was subjected to treatment that could be classified as rude or uncivil and some of this conduct may have been directed at plaintiff because of his German descent. However, plaintiff does not allege that these actions altered his working environment or that the rude behavior was so severe that plaintiff suffered physical harm or was unable to perform his job. Thus, plaintiff has not alleged a plausible Title VII claim based on his race or national origin, and this claim should be dismissed.

**B.**

Plaintiff also asserts a claim of intentional infliction of emotional distress under Oklahoma law. Oklahoma courts have recognized a cause of action for intentional infliction of emotional

9

distress, also known as the tort of outrage. See Gaylord Entertainment Co. v. Thompson, 958 P.2d 128, 149 (Okla. 1998). The action is governed by the narrow standards laid out in the Restatement Second of Torts, § 46. Id. In Breeden v. League Services Corp., 575 P.2d 1374 (Okla. 1978), the Oklahoma Supreme Court explained:

> Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!' The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.

Id. at 1376. To state a claim, a plaintiff must allege that "(1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's conduct caused the plaintiff emotional distress; and (4) the resulting emotional distress was severe." Schovanec v. Archdiocese of Oklahoma City, 188 P.3d 158, 175 (Okla. 2008) (quoting Computer Publ'ns, Inc. v. Welton, 49 P.3d 732, 735 (Okla. 2002)). Under Oklahoma law, the trial court must assume a "gatekeeper role" and make an initial determination that the defendant's conduct "may be reasonably regarded as sufficiently extreme and outrageous to meet the Restatement § 46 standards." Trentadue v. United States, 397 F.3d 840, 856 n.7 (10th Cir. 2005) (applying Oklahoma law).

In cases arising out of the workplace, Oklahoma appellate courts have found that a defendant engaged in extreme and outrageous conduct only when that defendant intentionally and persistently engaged in a course of conduct that harmed the plaintiff. See Computer Publications, 49 P.3d at 736 (claim should have been submitted to a jury when plaintiff presented evidence that harassment lasted more than two years and caused plaintiff to quit her job, move, and repeatedly change phone numbers); Miner v. Mid-America Door Co., 68 P.3d 212 (Okla. Civ. App. 2002) (employer's alleged

failure to reassign the plaintiff after learning of workplace harassment, even if unreasonable, was not extreme and outrageous); Gabler v. Holder & Smith, Inc., 11 P.3d 1269 (Okla. Civ. App. 2000) (noting that workplace harassment rarely rises to the level of extreme and outrageous conduct); Mirzaie v. Smith Cogeneration, Inc., 962 P.2d 678 (Okla. Civ. App. 1998) (employer's conduct was not extreme and outrageous when, inter alia, the plaintiff's manager made derogatory sexual remarks about the plaintiff, woke plaintiff up in the middle of the night to do unnecessary work, and terminated him two hours before his wedding); Zahorsky v. Community Nat'l Bank of Alva, 883 P.2d 198 (Okla. Civ. App. 1994) (employer not liable for intentional infliction of emotional distress when an employee forced the plaintiff to have sex with him and employer failed to fire the employee, even though the employer allegedly knew about the conduct).

Plaintiff has not adequately alleged an intentional infliction of emotional distress claim against defendant. Plaintiff alleges that two co-workers exchanged e-mails making derogatory remarks about his age and national heritage, but these e-mails were not sent to plaintiff and he was not made aware of the e-mails by the co-workers. This suggests that there was no intent to inflict emotional distress on plaintiff. Plaintiff also alleges that he was excluded from group activities and unspecified co-workers commented that his office "reeked" of German food. While this conduct may have been rude, it was not so extreme and outrageous that it rises to the level of extreme and outrageous conduct. Thus, plaintiff has not alleged a plausible intentional infliction of emotional distress claim, and this claim should be dismissed.

Plaintiff requests leave to file a second amended complaint re-alleging his claims. Dkt. # 37, at 6-7. However, the Court has already given plaintiff an opportunity to cure pleading deficiencies by filing an amended complaint, and the amended complaint also failed to state a plausible claim

against defendant. Plaintiff has not identified any additional facts that could have been alleged in the amended complaint that would make his employment discrimination claims or his intentional infliction of emotional distress claim any more plausible, and the Court declines to give plaintiff a second opportunity to file an amended pleading.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Dismiss Plaintiff's Amended Complaint (Dkt. # 31) is **granted**. A separate judgment of dismissal is entered herewith.

**DATED** this 13th day of September, 2012.

_____
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE